**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DERICK B.,** [1] | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00568-O-BP** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of the unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (ECF Nos. 1, 11). After considering the pleadings, briefs, and the administrative record, the undersigned recommends that United States District Judge Reed O'Connor **REVERSE** and **REMAND** the Commissioner's decision in accordance with this Recommendation.

**I.    STATEMENT OF THE CASE**

Plaintiff applied for DIB on August 12, 2015, alleging disability based on difficulty in concentrating, depression, lower back and neck pain, carpal tunnel, and joint pain in his hands and knees. (ECF No. 11 at 7-8; Tr. 22). The Commissioner initially denied his DIB application on November 4, 2015 and again upon reconsideration on March 7, 2016. (ECF No. 11 at 5; Tr. 141; Tr. 146). Plaintiff timely filed a request for a hearing before an administrative law judge ("ALJ").

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the plaintiff only by first name and last initial.

(ECF No. 11 at 5; Tr. 19). He attended and testified at the hearing before ALJ Jack W. Raines on March 7, 2017 in Fort Worth, Texas. (ECF No. 11 at 5; Tr. 20). Also present at the hearing were his attorney and a vocational expert ("VE"). (*Id.*). On June 28, 2017, the ALJ rendered a partially favorable decision finding that Plaintiff became disabled as of February 21, 2017, but that he was not disabled prior to that date. (ECF No. 1 at 5-6; Tr. 20-32).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Plaintiff had not engaged in substantial gainful activity since September 14, 2014. (Tr. 22). At step two, the ALJ determined that he had the severe impairments of mild degenerative disc disease of the lumbar spine, carpal tunnel syndrome, degenerative joint disease of the right first toe and knees, obesity, major depressive disorder, and bipolar disorder. (*Id.*). At step three, the ALJ found that his impairments did meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p) beginning on February 21, 2017. (Tr. 25; Tr. 29). The ALJ concluded that prior to February 21, 2017, he retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently. (Tr. 25). He could stand and walk for four hours and sit for six hours in an eight-hour workday. (*Id.*). He could not climb ropes, ladders, or scaffold, but could balance, kneel, stoop, crouch, crawl, and occasionally climb ramps and stairs. (*Id.*). He could frequently reach, handle, finger, and feel bilaterally, but could not work around hazardous moving machinery or at unprotected heights. (*Id.*). He could understand, remember, and carry out short, plain instructions in a simple, routine work environment and make judgments on uncomplicated work-related decisions. (*Id.*). He could appropriately interact with supervisors and have occasional contact with coworkers, but could not have face-to-face contact with the public. (*Id.*). Finally, he could appropriately respond to usual work pressures and changes in a work setting. (*Id.*).

The ALJ concluded that Plaintiff retained the identical RFC beginning on February 21, 2017, but was unable to concentrate, persist, and maintain pace in the workplace. (Tr. 29). At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as of September 14, 2014, the alleged disability onset date. (Tr. 30). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that he could perform prior to February 21, 2017. (*Id.*). The ALJ, however, determined that beginning on February 21, 2017, there were not a significant number of jobs in the national economy that he could perform. (Tr. 30-31).

The Appeals Council denied review on May 5, 2018. (ECF No. 11 at 6; Tr. 1-5). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to Plaintiff's pleadings, testimony at the administrative hearing, and the administrative record, he was forty-one years old on the alleged disability onset date of September 14, 2014, and forty-three years old at the time of the administrative hearing. (Tr. 46). He completed a college education. (Tr. 48). His employment history includes work as a car salesman, poker room supervisor, veteran service representative, and gambling dealer. (Tr. 49-52). He also served in the United States Army during the Gulf War from 1992 to 1996. (ECF No. 11 at 6). He asserts that his physical and mental impairments rendered him disabled under the SSA prior to February 21, 2017.

### III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the

claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC— "the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

IV.    **ANALYSIS**

Plaintiff claims that the ALJ erred in rejecting his treating source's medical opinion, and this legal error prejudiced him, and erred in rejecting the Veterans Administration's ("VA") rating decision that he could at best perform sedentary work in favor of a higher functioning RFC. (ECF No. 11 at 2-3).

**A.      The ALJ Erred in Rejecting Plaintiff's Treating Source's Medical Opinion, and this Legal Error Prejudiced Him.**

Plaintiff's first argument is that the ALJ improperly rejected the medical opinion of his treating provider, Melanie M. Biggs, Ph.D. (ECF No. 11 at 13-15). He contends that Dr. Biggs' opinion should have been given "controlling weight," as the Commissioner generally recommends. (*Id.* at 17-18). He argues further that if the ALJ did not accord Dr. Biggs' opinion "controlling weight" because it "[was] inconsistent with the other substantial evidence in the case record," the ALJ still should have considered her opinion and not rejected it. (*Id.* at 18). Finally, Plaintiff argues that the ALJ's improper rejection of Dr. Biggs' opinion affected his substantial rights because the ALJ assessed a higher functioning RFC.

"The treating-source rule provides that an ALJ should give great weight to the opinion of a treating physician who is familiar with a claimant's medical condition and impairments." *Perez*, 415 F.3d at 465–66. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455; *see also* 20 C.F.R. § 404.1527(c)(2).

Nonetheless, an "ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Lackey v. Shalala*, 40 F.3d 384, 384 (5th Cir. 1994) (emphasis added). A treating physician's opinion "may be assigned little or no weight when good cause is shown," such as where "the physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 455–56.

The Fifth Circuit in *Newton* held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion

6

of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453 (emphasis in original). These criteria include:

> (1) the physician's length of treatment of the claimant and frequency of examination;
> (2) the nature and extent of the treatment relationship;
> (3) the support of the physician's opinion afforded by the medical evidence of record;
> (4) the consistency of the opinion with the record as a whole;
> (5) the specialization of the treating physician;
> (6) any other factors which tend to support or contradict the opinion.

*Id.* at 456; *see also* 20 C.F.R. § 404.1527(c)(2).

Failure to perform the *Netwon* analysis requires the Court to determine whether the ALJ's procedural error affected the substantial rights of the claimant, which warrants reversal and remand. *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *10 (N.D. Tex. Sept. 17, 2015).

Although Dr. Biggs is not a physician, she is a psychologist who is an accepted medical source. 20 C.F.R. § 404.1502(a)(2). Her medical opinion was based on her treatment of Plaintiff from November 25, 2014, two months after his alleged disability onset date, through February 2017. (Tr. 588-89; Tr. 597; Tr. 639; Tr. 671-72; Tr. 676-77; Tr. 685-86; Tr. 690-91; Tr. 703-04; Tr. 727-29; Tr. 733-34; Tr. 745-46). The ALJ gave Dr. Biggs' medical opinion deference by according it substantial weight, beginning on February 21, 2017, as to what Plaintiff still could do despite his mental impairments. (Tr. 29). The ALJ recognized that as a treating source, Dr. Biggs had spent a great deal of time with him and was familiar with his condition and any worsening. (*Id.*). Furthermore, the ALJ explained that beginning on February 21, 2017, Dr. Biggs' medical opinion became consistent with the record, including Plaintiff's allegations. (*Id.*). The ALJ did not discuss Dr. Biggs' specialty or the supportability of her opinion per the *Newton* analysis. (*Id.*). The

ALJ performed most of the *Newton* analysis when explaining why he gave substantial weight to Dr. Biggs' medical opinion as of February 21, 2017. (*Id.*).

However, the ALJ did not explain why he accorded *no weight* to Dr. Biggs' medical opinion that Plaintiff had certain severe impairments between September 14, 2014 and February 21, 2017. (Tr. 29; Tr. 1020) (emphasis added). Because the ALJ failed to accord any weight to Dr. Biggs' medical opinion for the period prior to February 21, 2017 and did not conduct the *Newton* analysis to explain his reasoning for not doing so, this procedural error affected Plaintiff's substantial rights. Had the ALJ conducted the *Newton* analysis or accorded any weight to Dr. Biggs' medical opinion prior to February 21, 2017, he may have concluded that Plaintiff had a lower functioning RFC prior to that date. This outcome may have resulted in the ALJ's determination that he was disabled prior to February 21, 2017. Therefore, the ALJ's procedural error requires remand. *Lee v. Colvin*, No. 5:15-CV-010-C, 2015 WL 7196389 (N.D. Tex. Nov. 16, 2015), *report and recommendation adopted*, No. 5:15-CV-010-C, 2015 WL 7196389 (N.D. Tex. Nov. 16, 2015) (remanding where the ALJ did not assign any weight to the opinions of a treating physician or perform an analysis under 20 C.F.R. § 404.1527(c)).

### B.      The ALJ was Not Required to Give the VA's Rating Decision Great Weight.

On February 11, 2016, the VA determined that Plaintiff could only perform sedentary work that allowed for frequent breaks. (Tr. 557). The ALJ's RFC differs from the VA's assessment. According to Plaintiff, "[b]ecause the ALJ did not give persuasive, specific, and valid reasons— supported in the record—for why he gave the VA disability rating less weight, the Court should reverse [his] decision." (ECF No. 11 at 23).

Though a VA rating that Plaintiff could only perform sedentary work is not legally binding on the Social Security Administration because the criteria applied by the two agencies are different,

the rating is generally entitled to great weight, and the ALJ must consider it in his decision. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). However, ALJs need not give great weight to a VA disability determination if they adequately explain the valid reasons for not doing so. *Id.* An ALJ's disagreement with the VA's finding of disability is not reversible error if the record reflects consideration of that finding. *Duke v. Colvin*, No. 5:16-CV-151-DAE, 2016 WL 6651394, at *5 (W.D. Tex. Nov. 10, 2016). According to the regulations in effect at the time of the ALJ's decision:

> [A] decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. *Therefore, in claims filed* (see § 404.614) *on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits*. However, we will consider all [] the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (effective January 18, 2017) (emphasis added).

Here, Plaintiff applied for DIB on August 12, 2015. (ECF No. 11 at 7-8; Tr. 22). Because he submitted his application before March 27, 2017, the ALJ had to analyze why he gave "little weight" to the VA's decision regarding Plaintiff's disability prior to February 21, 2017. The undersigned finds that the ALJ complied with this regulation. The ALJ "correctly noted the relevant legal standards from *Chambliss* concerning the VA disability ratings." (Tr. 28). For example, the ALJ stated that although he "must evaluate and consider all of the evidence in the record, including the decision of . . . [the VA,] the letter from [the] VA Regional Office Director . . . has no indication of any doctors stating this opinion." (*Id.*). "Additionally, the [ALJ explained that the] VA criteria [differed] from the [SSA] criteria in [regard] to what constitutes a finding of

disability." (*Id.*). He then accorded "little weight" to the VA's disability rating. (*Id.*). Given these facts, the ALJ not only considered the VA's disability rating, but he explained why he accorded it "little weight" as required by 20 C.F.R. § 404.1504 and *Chambliss*. Because the ALJ considered the VA disability rating, as required, and gave valid reasons for not assigning it great weight, there is no error. Therefore, remand is not required on this ground.

## V.    CONCLUSION

The undersigned concludes that reversal and remand are required because the ALJ did not accord any weight to Dr. Biggs' medical opinion concerning Plaintiff's limitations prior to February 21, 2017 and did not apply the *Newton* analysis to that period. This legal error affected Plaintiff's substantial rights. The ALJ was not required to give more specific reasons for giving the VA's disability rating little weight, and reversal is not required on this point.

### RECOMMENDATION

After considering the pleadings, briefs, and the administrative record, the undersigned recommends that United States District Judge Reed O'Connor **REVERSE** and **REMAND** the Commissioner's decision in accordance with this Recommendation.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed **July 9**, **2019**.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

11